J-S06040-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NAEEM DAVIS | : | |
| | : | |
| Appellant | : | No. 2439 EDA 2017 |

Appeal from the PCRA Order May 19, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0010122-2008

BEFORE: PANELLA, P.J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    Filed: April 8, 2021

Naeem Davis (Appellant) appeals from the May 19, 2017 order of the Court of Common Pleas of Philadelphia County (PCRA court) dismissing his petition for relief pursuant to the Post-Conviction Relief Act.[1] We affirm.

**I.**

We glean the following facts from the certified record. On May 24, 2008, Donnell Murphy (The Victim) went to the 54th Street Lounge with his cousins, James and Shantwan Murphy.[2] Appellant was also at the bar with Latasha

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541 *et seq.*

[2] For clarity, we refer to James and Shantwan by their first names.

Friday (Friday). At some point that evening, the Victim stepped on Friday's flip-flop shoe and the two began to argue. Notes of Testimony, 8/18/2009, at 117-19. Shantwan intervened and the argument escalated into a physical confrontation between Friday and Shantwan.[3] Appellant and James attempted to separate the two women. The Victim then struck Appellant and Appellant fell out of the front door of the bar and onto the pavement. All of the individuals continued the altercation outside of the bar.

At trial, James testified that after the group left the bar, the Victim attempted to strike Appellant again while he was on the ground outside, but James separated the two. *Id.* at 123. James then attempted to separate Friday and Shantwan. While his back was turned to Appellant and the Victim, he heard several gunshots and turned around to see that the Victim had been shot. James further testified that at the time of the shooting, Appellant's jaw was wired shut because it had been broken a few weeks earlier. *Id.* at 147.

The Commonwealth presented additional testimony from one eyewitness who saw the shooting itself but was not involved in the altercation. William Minor (Minor) testified that he approached the 54th Street Lounge and

---

[3] Friday testified for the defense at trial. Notes of Testimony, 8/19/2009, at 67-70. She testified that once the fight moved outside the bar, two men attacked Appellant as he was lying in the street. *Id.* at 71-72. She heard the gunshots but did not see the shooting itself because she was still engaged with Shantwan. *Id.* at 72-73. In its opinion filed during Appellant's direct appeal, the trial court stated that it found Friday to be "evasive, belligerent and incredible" as a witness. Trial Court Opinion, 5/28/2013, at 7.

observed the altercation between the two women, Appellant and the Victim through the door. As he was standing outside, all four individuals came out of the bar and Appellant initially fell backwards onto the pavement. Minor testified that Appellant became angry, stood up, picked up a gun from the ground, and pointed it at the Victim. *Id.* at 71-74. The Victim then put his hands in the air and said, "I was only trying to break up the fight." *Id.* at 74. Appellant then shot the Victim repeatedly before running from the scene. Minor did not see the Victim holding a weapon or striking Appellant at any point.

Appellant was arrested shortly after the shooting and he gave a statement to police. He described the fight between Friday and Shantwan and explained that he shot at the Victim in self-defense when the fight escalated outside of the bar. He said that he wanted to apologize to the Victim's family and that he had been trying to protect himself. He also explained that his jaw was wired shut because it had been broken a few weeks prior.

Dr. Sam Gulino (Dr. Gulino), Chief Medical Examiner for the city of Philadelphia, testified at trial regarding the Victim's injuries and cause of death. Notes of Testimony, 8/19/2009, at 6. Dr. Gulino testified that the Victim had been shot twice and possibly grazed by a third bullet. One of the gunshot wounds entered the Victim through the front of his neck and exited through his back in a downward direction, and stippling around the wound indicated that the bullet had been shot from a distance of two to three feet.

*Id.* at 18-19. Dr. Gulino opined that this gunshot was fatal. The second gunshot wound entered through the Victim's upper back and exited through the top of his shoulder in an upward direction, and Dr. Gulino could not determine how far the Victim was from the shooter when he sustained that wound. *Id.* at 20-21. Dr. Gulino testified that the wounds were consistent with the Victim being shot while standing upward and initially facing his shooter, then falling to the ground. *Id.* at 23. He testified that if the shooter was shorter than the Victim was, the first gunshot could have entered at the downward angle if the Victim had been bent forward when he was shot. *Id.* at 40. He could not determine the order in which the two gunshot wounds were inflicted. *Id.* at 24.

Appellant also testified at trial, again admitting that he shot and killed the Victim. *Id.* at 114. He testified that he shot the Victim while trying to defend himself against the Victim and two other men who were attacking him as he was lying on the ground outside the bar. *Id.* He testified that the Victim knew that his jaw was broken and he threatened to "break the other side of [Appellant's] face" during the argument in the bar. *Id.* at 122-23. He stated that the men threw him out of the bar and into the street, where the Victim, James and another individual began hitting him. He testified that he knew that the Victim was a boxer and, when he saw the Victim bending over him attempting to strike him, he shot at the Victim. *Id.* at 129, 156. He said that he did not intend to actually hit anyone but that he fired the weapon to try to

scare the men away. *Id.* He felt that he had "blacked out" during the shooting. *Id.* at 135.

Following a nonjury trial,[4] Appellant was convicted of third-degree murder, carrying a firearm on the public streets of Philadelphia, and possessing an instrument of crime.[5] He was subsequently sentenced to an aggregate of 20 to 40 years of incarceration. This court affirmed the judgment of sentence and our Supreme Court denied *allocatur*. **Commonwealth v. Davis**, 1550 EDA 2012, at *12 (Pa. Super. Jan. 15, 2014), *allocatur denied*, 38 EAL 2014 (Pa. July 2, 2014).

Appellant filed a timely *pro se* PCRA petition on May 12, 2015. After appointed counsel filed a **Turner**/**Finley**[6] no-merit letter and petition to withdraw, current counsel filed a supplemental petition and a second supplemental petition raising additional claims. The Commonwealth filed a motion to dismiss the petition and Appellant filed a response. The Commonwealth responded with a second motion to dismiss and Appellant filed

---

[4] The same court presided over Appellant's non-jury trial and PCRA proceedings.

[5] 18 Pa.C.S. §§ 2502(c), 6108, & 907.

[6] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

an additional response.[7]  The PCRA court issued a notice of its intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907.  On May 19, 2017, the PCRA court dismissed the petition.  Appellant timely appealed and he and the PCRA court have complied with Pa.R.A.P. 1925.[8]

## II.

Appellant raises five issues on appeal:  that trial counsel was ineffective for failing to call a witness; that appellate counsel was ineffective in arguing the sufficiency claim in Appellant's direct appeal; that trial counsel was ineffective for failing to challenge the constitutionality of the sentencing guidelines for third-degree murder; that appellate counsel was ineffective for failing to challenge the discretionary aspects of the sentence; and that the

_____

[7] The Commonwealth argues on appeal that the supplemental petitions and responses to the motion to dismiss were unauthorized filings and should not be considered by this court.  **See** Commonwealth's Brief at 10-12.  Because the PCRA court stated in its opinion pursuant to Pa.R.A.P. 1925(a) that it considered these filings before dismissing the petition, we will consider them on appeal as well.  PCRA Court Opinion, 6/28/18, at 2.

[8] "The standard of review of an order dismissing a PCRA petition is whether that determination is supported by the evidence of record and is free of legal error."  **Commonwealth v. Weimer**, 167 A.3d 78, 81 (Pa. Super. 2017).  "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record."  **Id.** (citation omitted).  "[A] PCRA court has discretion to dismiss a PCRA petition without a hearing if the court is satisfied that there are no genuine issues concerning any material fact; that the defendant is not entitled to post-conviction collateral relief; and that no legitimate purpose would be served by further proceedings."  **Commonwealth v. Brown**, 161 A.3d 960, 964 (Pa. Super. 2017) (citations omitted).

PCRA court erred by dismissing the petition without a hearing. Appellant's Brief at 11-13. Appellant has waived his claims on appeal but, even if we were to reach the merits, we would conclude he is not entitled to relief.

Appellant's brief is deficient in several respects. For each of the five issues raised on appeal, he sets forth one paragraph of argument without citation to the certified record and few, if any, citations to pertinent legal authority. **See** Pa.R.A.P. 2111(a), 2119(a), (b), (c) & (d). Moreover, he has failed to develop any issue in any meaningful fashion capable of review and has waived all issues on this basis. **See Commonwealth v. Patterson**, 180 A.3d 1217, 1229 (Pa. Super. 2018) (holding that failure to include citation to relevant authority or to develop issue in any other meaningful fashion capable of review results in waiver of claim). While he purports to raise claims related to ineffective assistance of counsel, Appellant has further waived these claims by failing to develop any of the three prongs of a claim of ineffective assistance, as discussed *infra*. **See Commonwealth v. Fears**, 86 A.3d 795, 804 (Pa. Super. 2014).

In lieu of presenting an appellate argument, Appellant attempts to incorporate by reference arguments set forth in his pleadings in the PCRA court. Our Supreme Court has held that incorporation by reference is an "unacceptable" form of appellate advocacy that circumvents the briefing requirements delineated in the Rules of Appellate Procedure:

> Our rules of appellate procedure specifically require a party to set forth in his or her brief, in relation to the points of his argument

> or arguments, "discussion and citation of authorities as are deemed pertinent," as well as citations to statutes and opinions of appellate courts and "the principle for which they are cited." Pa.R.A.P. 2119(a), (b). Therefore our appellate rules do not allow incorporation by reference of arguments contained in briefs filed with other tribunals, or briefs attached as appendices, as a substitute for the proper presentation of arguments in the body of the appellate brief.

*Commonwealth v. Briggs*, 12 A.3d 291, 342-43 (Pa. 2011). Because he attempts to incorporate by reference arguments from his prior filings rather than setting forth his claims in his brief in compliance with our rules of procedure, his claims are waived. *Id.*

### III.

Moreover, even if we were to reach the merits of the issues Appellant raises on appeal, we would conclude that he has not sufficiently pled or proven his claims and the PCRA court did not err in dismissing the petition without a hearing. His claims challenge the effectiveness of his trial and direct appeal counsel. "To prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result." *Commonwealth v. Sarvey*, 199 A.3d 436, 452 (Pa. Super. 2018). "[F]ailure to prove any of these prongs is sufficient to warrant dismissal of the claim without discussion of the other two." *Commonwealth v. Robinson*, 877 A.2d 433, 439 (Pa. 2005) (citation omitted). Counsel cannot be ineffective for failing to pursue a meritless claim. *Commonwealth v. Rykard*, 55 A.3d 1177, 1190 (Pa. Super. 2012). Finally, we presume that

counsel has rendered effective assistance. *See Commonwealth v. Treiber*, 121 A.3d 435, 445 (Pa. 2015).

**A.**

We begin with Appellant's ineffectiveness challenges related to trial counsel. First, he argues that trial counsel was ineffective for failing to call Reginald Strange (Strange) as a witness at trial or sentencing because Strange "would have provided the critical back story to the case as to why [Appellant] shot the decedent." Appellant's Brief at 11. He argues that Strange would have corroborated his testimony that he had broken his jaw in a fight weeks prior to the shooting and that the Victim and his compatriots were hitting Appellant on his jaw at the time of the shooting.[9] *Id.*; Second Supplemental Amended PCRA Petition, 7/14/16, at Paragraphs 8-9. The petition averred that Strange would testify that he heard the gunshots and saw Appellant getting up from where he was lying on the ground after the shots were fired. Second Supplemental Amended PCRA Petition, 7/14/16, at Paragraphs 8-9. This argument is meritless.

To succeed on a claim that counsel was ineffective for failing to call a witness at trial, a PCRA petitioner must establish:

---

[9] While Appellant did not attach an affidavit from Strange to his petition, he did include a certification from PCRA counsel detailing counsel's conversation with Strange and the substance of the testimony he expected Strange to give if called at an evidentiary hearing. *See* 42 Pa.C.S. § 9545(d)(1)(ii); *Commonwealth v. Grayson*, 212 A.3d 1047, 1052-53 (Pa. Super. 2019).

(1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew, or should have known, of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Wantz*, 84 A.3d 324, 331 (Pa. Super. 2014) (citation omitted). When analyzing the prejudice prong under our standards for ineffectiveness, we must determine whether there is a reasonable probability that the outcome of the trial would have been different if the witness had testified. *Id.* at 333-34.

Here, Appellant and James both testified at trial that Appellant's jaw was broken at the time of the murder. Additionally, in his statement to police on the night of his arrest, Appellant explained that his jaw was broken and that he was trying to protect himself from further injury when he fired his weapon. The trial court, sitting as fact-finder, was aware of Appellant's injury and considered his testimony that the Victim had threatened to break the other side of his jaw when it reached its verdict. It further considered Appellant's testimony that he was lying on the ground when he shot the Victim in self-defense.

In rejecting this ineffectiveness claim, the PCRA court concluded that Strange's testimony that the Victim attacked Appellant and that he was on the ground when the shots were fired would have been cumulative of that of Appellant and Friday. PCRA Court Opinion, 6/28/18, at 10. The PCRA court sat as fact-finder during Appellant's trial and found that the testimony from

Appellant and Friday was incredible. *Id.* at 6. It instead credited the testimony of Commonwealth witnesses, including Minor's testimony that Appellant shot the Victim while both were standing and Dr. Gulino's testimony that the wounds were consistent with this version of events. As a result, Appellant cannot establish that Strange's testimony would have altered the verdict and trial counsel cannot be ineffective for failing to call Strange as a witness.

Next, Appellant contends that trial counsel was ineffective for failing to challenge the constitutionality of the sentencing guidelines for third-degree murder. He argues that the sentencing guidelines for third-degree murder "den[y] due process and/or equal protection." Appellant's Brief at 12. He points out that the standard range of the sentencing guidelines includes the statutory maximum sentence of 20 to 40 years' incarceration, even for offenders such as himself with a low prior record score.[10] He contends that lower sentencing guidelines for offenders with lower prior record scores would have required the trial court to put more reasons on the record before sentencing him to the statutory maximum penalty for third-degree murder, affording him more of a chance of relief if he had appealed the discretionary aspects of his sentence. *Id.* at 13.

_____

[10] Appellant's prior record score at the time of sentencing was 1. Notes of Testimony, 10/30/09, at 5.

As the Commonwealth points out, this court has previously rejected this claim. **Commonwealth v. Pittman**, 737 A.2d 272, 274 (Pa. Super. 1999). There, we concluded that the sentencing guidelines merely take into account the severity of the crime of third-degree murder while allowing the sentencing court discretion to determine an appropriate sentence based on the circumstances of the individual crime. **Id.** ("[I]n view of the fact that the court is free to sentence to any statutorily allowed term it deems appropriate to the specific circumstances of the case, we do not perceive how [the standard range of the guidelines] alone deprives defendants of any constitutional rights."). We further concluded that the guidelines do not deprive a defendant of appellate review, as a defendant may still argue that the guidelines were erroneously applied or unreasonable under the circumstances when seeking appellate relief. **Id.** As **Pittman** was the law at the time of Appellant's sentencing, his trial counsel cannot be ineffective for failing to raise this meritless claim. **Rykard**, **supra**.

**B.**

Next, we consider Appellant's claims related to appellate counsel's effectiveness in litigating his direct appeal. First, he argues that appellate counsel was deficient in presenting a challenge to the sufficiency of the evidence. He contends that appellate counsel failed to "address the factual impossibility of the crime" and the "inconsistencies/discrepancies with the physical evidence." Appellant's Brief at 12. This claim is meritless.

In his direct appeal, Appellant argued that the evidence was insufficient to establish the malice element of third-degree murder and that the Commonwealth had failed to disprove beyond a reasonable doubt his claim of self-defense. *Commonwealth v. Davis*, 1550 EDA 2012, at *7-8 (Pa. Super. Jan. 15, 2014) (unpublished memorandum). We concluded that the trial court had credited Minor's testimony that Appellant shot the Victim multiple times while both men were standing and facing each other and the Victim had his hands in the air. *Id.* at *8. We also acknowledged that while the trial court did not find Appellant's testimony wholly credible, it did believe his testimony that he did not intend to kill the Victim when he fired his weapon. *Id.* Based on these credibility findings, we concluded that the evidence was sufficient to disprove his claim of self-defense and to establish that he acted with malice, and we declined to reweigh the evidence in Appellant's favor. *Id.* at *8-9.

Appellant's current claim of "factual impossibility" again would have required this court to reweigh the evidence on appeal and credit his own version of events which the trial court specifically rejected. He posits that the downward direction of the fatal bullet wound is inconsistent with eyewitness testimony that he shot the Victim while both men were standing and facing each other. He contends that the trajectory of the bullet wound is more consistent with his version of events in which he shot at the Victim while lying on the ground. However, at trial, Dr. Gulino testified that the Victim's wounds were consistent with the testimony that he was shot while standing upward

and facing his shooter. He explained that even if the shooter was shorter than the Victim was, the bullet could have entered at this trajectory if the Victim had been leaning forward at the moment he was shot.

On appellate review of a sufficiency challenge, this court views the evidence in the light most favorable to the Commonwealth as the verdict winner. *Commonwealth v. Lopez*, 57 A.3d 74, 79 (Pa. Super. 2012). The Commonwealth presented eyewitness testimony that the Victim was shot while standing upright and holding his arms in the air, and testimony from the medical examiner confirming that the bullet wounds were consistent with this version of events. While Appellant was free to argue in the trial court that his version of events was more credible and supported by the evidence, the trial court, sitting as fact-finder, was entitled to resolve the factual dispute in favor of the Commonwealth. On appeal, we would not have disturbed that determination, as it is well-supported by the record. Thus, we conclude that appellate counsel could not have been ineffective for failing to raise this meritless claim. *Rykard, supra*.

Next, Appellant contends that appellate counsel was ineffective for failing to challenge the discretionary aspects of his sentence during his direct appeal. Appellant was sentenced to 20 to 40 years' incarceration for the count of third-degree murder, 1 to 2 years' incarceration for carrying a firearm on the public streets of Philadelphia, and 1 to 2 years' incarceration for possessing an instrument of crime. The sentences were imposed concurrently for an

aggregate sentence of 20 to 40 years of incarceration. The sentences were within the standard range of the sentencing guidelines. Appellant filed a timely post-sentence motion arguing that the sentence was inconsistent with the Sentencing Code and that the trial court did not place adequate reasons on the record to justify the sentence. **See** Post Sentence Motion, 11/3/09, at 1-2. Appellate counsel included these issues in Appellant's concise statement pursuant to Pa.R.A.P. 1925(b), but elected not to raise the issue in his brief on appeal.

An appellant must meet certain procedural prerequisites for appellate review of the discretionary aspects of a sentence. "The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal." **Commonwealth v. Conte**, 198 A.3d 1169, 1173 (Pa. Super. 2018) (citation omitted). An appellant must preserve his claims at the time of sentencing or in a post-sentence motion, file a timely notice of appeal, include a statement of reasons for allowance of appeal pursuant to Rule of Appellate Procedure 2119(f) in his brief, and raise a substantial question for review. **Id.**

"A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Commonwealth v. Clarke**, 70 A.3d 1281, 1286–87 (Pa. Super. 2013)

(citation omitted).  Appellant argued in his post-sentence motion that the trial court imposed its sentence without considering his rehabilitative needs.  This claim presents a substantial question for our review.  ***Commonwealth v. Swope***, 123 A.3d 333, 340 (Pa. Super. 2015) (holding that failure to consider rehabilitative needs and mitigating factors raised a substantial question); ***see also*** 42 Pa.C.S. § 9721(b).  He further argued that the trial court failed to place adequate reasons on the record to support the sentence.  We have previously held that this constitutes a substantial question.[11] ***Commonwealth v. Malovich***, 903 A.2d 1247, 1253 (Pa. Super. 2006).

We review a challenge to the discretionary aspects of a sentence for an abuse of discretion.  ***Commonwealth v. Moury***, 992 A.2d 162, 169 (Pa. Super. 2010) (citation omitted).  When reviewing the discretionary aspects of a sentence that falls within the sentencing guidelines, we must affirm unless "application of the guidelines would be clearly unreasonable."  42 Pa.C.S. § 9781(c)(2).  When imposing a sentence, the court must consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the Victim and on the community, and the rehabilitative needs of the defendant."  42 Pa.C.S. § 9721(b).  This court may not reweigh the factors under 42 Pa.C.S. § 9721(b) if they were properly considered by the

_____

[11] For the purposes of his ineffectiveness claim, we presume that Appellant would have raised these questions that were preserved in his post-sentence motion in a statement pursuant to Pa.R.A.P. 2119(f) in his direct appeal.

sentencing court. **Commonwealth v. Bricker**, 41 A.3d 872, 876 (Pa. Super. 2012).

Moreover, we recognize that the sentencing court, which is present at the hearing and observes all witnesses and the defendant firsthand, "is in a superior position to review the defendant's character, defiance or indifference, and the overall effect and nature of the crime." **Commonwealth v. Lekka**, 210 A.3d 343, 353 (Pa. Super. 2019) (citation omitted). "Where the sentencing court had the benefit of a presentence investigation report ("PSI"), we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. Further, where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code." **Commonwealth v. Hill**, 210 A.3d 1104, 1117 (Pa. Super. 2019) (internal quotations & citation omitted).

Our review of the sentencing hearing reveals that the trial court considered all required factors and did not abuse its discretion in imposing a standard-range sentence of the statutory maximum in this case. The trial court sat as fact-finder in Appellant's non-jury trial and was familiar with the facts of the crime. The court conducted a lengthy sentencing hearing and heard the Victim impact testimony from the Victim's stepsister, two uncles, stepfather and mother. Notes of Testimony, 10/30/09, at 21-45. The court also received letters from members of Appellant's own family and heard

testimony from Appellant's grandmother regarding his childhood and family history. *Id.* at 13-19. It heard allocution from Appellant himself, during which he apologized to the Victim's family and maintained that he had acted in self-defense. *Id.* at 60-72. The court considered presentence investigation and psychological reports before imposing its sentence.

Under these circumstances, the trial court did not abuse its discretion in crafting Appellant's sentence. The court considered the impact of gun violence on the community generally as well as the impact of the Victim's death on his own family. The court acknowledged that the confrontation was precipitated by Friday, but stated that Appellant was responsible for reacting to the situation with "an inappropriate level of violence." *Id.* at 73. It was aware of Appellant's family history and considered the mitigating factors set forth in the presentence investigation report when imposing the standard-range sentence. *Hill*, *supra*. Because the trial court did not abuse its discretion in sentencing, a challenge to the discretionary aspects of his sentence on direct appeal would not have been successful and Appellant cannot establish that appellate counsel was ineffective for failing to raise this claim. *Rykard*, *supra*.

Finally, because Appellant did not establish any genuine issue of material fact necessitating an evidentiary hearing or that he is entitled to post-conviction relief, the PCRA court did not err in dismissing the petition without a hearing. *Brown*, *supra*.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/8/21